## LOUISIANA OIL REFINING CORPORATION v. NOBLE-TROTTER RICE MILLING CO., Inc.
### No. 1419.

Court of Appeal of Louisiana. First Circuit. Jan. 21, 1935.

Edwin F. Gayle, of Lake Charles, for appellant.

Clement M. Moss and Vance G. Plauche, both of Lake Charles, for appellee.

LE BLANC, Judge.

This suit is directed by plaintiff, as the advancer of supplies to a rice farmer, named De Witt Lewis, on whose crop it had a lien and privilege arising out of a pledge, against the operator of the rice mill which purchased and milled the rice and disposed of the pro-.

ceeds without giving full effect to the pledge of which it had actual knowledge. The claim is one in damages for the sum of $793.82, the difference between the full amount of the advances alleged to have been the sum of $1,-644.18, and the amount received by plaintiff from the proceeds of the rice, to wit, the sum of $850.36. In addition thereto, plaintiff claims interest at the rate of 8 per cent. from October 1, 1932, the date of the note given to represent the advances, and also 10 per cent. of the amount of the unpaid indebtedness as attorney's fees, as provided for in the said note.

The gist of the plaintiff's petition is contained in those paragraphs in which it is alleged that, notwithstanding its full knowledge of the pledge on the rice, defendant milled and disposed of the same and converted the same into money and evidences of debt which it has placed beyond the reach of plaintiff under its pledge and that it has failed and refused to pay plaintiff in the manner provided by said pledge. It is alleged that the acts so committed by defendant were unlawful and in violation of plaintiff's rights under its pledge, preventing it from enforcing its rights thereunder, and thus causing it the damage which it claims to have sustained.

From the numerous exceptions that were filed by the defendant, one would be led to believe that the case presents manifold issues involving rather complicated propositions of law and of pleading. The mass of testimony submitted on the trial of the case also would indicate that there is a rather intricate problem in accounting involved. However, the exceptions appear to have all passed out of consideration, and there seems to be no serious dispute as to figures and accounts. In fact, a careful reading of the record reveals that, after all, there is a simple issue only, one of fact, which arises out of the answer of the defendant which partakes of the nature of a plea of estoppel. The defense rests on the proposition that the distribution of the proceeds from the sale of the rice, which was covered by the plaintiff's pledge, was made with the full knowledge and acquiescence of Mr. Harry Woosley, plaintiff's agent, who was personally present, assisting and agreeing to all that was done.

There was quite a sharp conflict of testimony. The learned trial judge, who has since died, did not decide the case on the credibility of the witnesses. He held that the presumption created by the issue of fact, that a man does not lightly surrender or abandon a valuable right, is one which should yield only to a very positive preponderance of evidence. This burden, he held, had not been carried by the defendant, and he accordingly rendered judgment in favor of plaintiff. He found however, that there was a certain amount of the proceeds paid out by defendant which was justly chargeable to labor, which was a ranking privilege over that of the plaintiff, and he therefore reduced the amount awarded to that extent. The judgment was for the sum of $366.30 with 8 per cent. interest from October 4, 1932, with no allowance for attorney's fees as demanded. Defendant has appealed.

De Witt Lewis, the farmer, rented the lands cultivated to make this rice crop from the Coastal Farms, Inc., of which Mr. Edwin F. Gayle, attorney for the defendant herein, is president and general manager. He had about 300 acres under lease on a crop share basis; his interest being four-fifths and that of the landowner, one-fifth. The 300 acres were described, in the act of lease, as being in sections 19, 29, and 30, in township 12 south, range 6 west, in Cameron parish. In the act of pledge from Lewis to plaintiff, it is to be noted that the crop lien is declared to be granted upon four-fifths of the crop of rice to be grown and harvested on 250 acres situated in the south half of section 19, township 12 south, range 6 west. On September 26, 1932, long after all advances had been made by plaintiff, we find it obtaining a second pledge from Lewis to secure the additional sum of $1,000 on the crops to be made and harvested on the balance of the land that was not included in the first pledge. It appears, moreover, that there were other lands than those of the Coastal Farms, Inc., which Lewis cultivated, and, although the advances made by plaintiff may have been used by him in making the whole crop which he harvested, and it may be that the lien covered it all, nevertheless, the circumstances herein mentioned may well be taken as an indication of some doubt which might have arisen in the mind of a layman as to the real extent of the pledge, and it may have had some bearing on the alleged conduct of plaintiff's agent and representative at the time the distribution of the proceeds of the crop was made.

There is incorporated in the defendant's answer a detailed account of the sale of the rice and of the distribution of the proceeds as made after each sale. The distribution shows invariably there was an amount devoted to the payment of rent, next to the payment of harvesting expenses, and the remainder to plaintiff on account of advances.

It is claimed by Mr. Gayle, manager of the Coastal Farms, Inc., the landlord, and by Mr. Jack Gardner, buyer for the defendant rice mill, as also by Mr. Thos. S. Tyler, bookkeeper and cashier of the defendant corporation, that Mr. Woosley knew and agreed to the distribution of the proceeds as made. On the other hand, Mr. Woosley denies that there was any understanding or agreement on his part, and his testimony in that regard is supported to some extent by De Witt Lewis.

Messrs. Gayle, Gardner, and Tyler do not all agree as to the different meetings or conferences which Mr. Woosley attended and participated in, but their testimony leaves no doubt in our minds that he was present on some occasions, and Mr. Gayle's testimony in particular makes it certain that, if not at the conferences mentioned, or at least on numerous other occasions, Mr. Woosley was fully informed by him, discussed the matter of harvesting expenses with him, and acquiesced in all that was done. Among the items referred to as harvesting expenses are included a good many outside of actual labor costs, such as sacks, twine for the rice binder, etc., as to which plaintiff's lien was superior. It appears, however, from the testimony of Mr. Gayle, that all of these items were taken into account in his discussions with Mr. Woosley, who at times agreed with him that the harvesting bills appeared a bit large, but said to "let it go at that."

A circumstance which adds weight to the testimony of the defendant's witnesses lies in the fact, as admitted by Woosley, that it is customary in the rice business, when the mill pays off, to make the checks in the name of all parties having some interest in the crop, so that each may protect himself when presented with them for indorsement, which custom, however, was deviated from in this instance and the checks made to each of the parties individually. From the fact that Mr. Woosley accepted the draft made payable to his company in this manner, without question or protest, in face of his knowledge that it was unusual, it may well be inferred that he was aware of the way in which the money had been distributed and had consented thereto.

As to Lewis' testimony, we may state that, whilst in some respects it may be said to corroborate that of Woosley in that he says that the latter was never present at any conference attended by him, which is in contradiction of some of defendant's testimony, otherwise it has not much bearing on this, the important issue in the case, as we view it. As

a matter of fact, his testimony is not altogether contradictory to that of the defendant's witnesses as to Mr. Woosley's knowledge of the distribution of the fund from the very beginning, as witness his answer to the question whether the latter was present when the matter of deducting labor checks was taken up: "No sir," he says, meaning that he was not present, "The only thing between Mr. Woosley in regard to labor, he came to me after the first distribution and informed me he thought he was not getting the proper amount of money out of these drafts, and ı told him that I had nothing to do with the distribution of it. That Mr. Gayle was issuing the checks for it." Under the circumstances as thus related, in view of Mr. Woosley's complaint, it was his duty to take the matter up with Mr. Gayle before cashing the draft thus leading the latter to believe that he had acquiesced in the method of distribution. This of course is said on the assumption that Mr. Woosley did not talk to Mr. Gayle about the matter at the time of the first distribution, which is contrary to the positive testimony of Mr. Gayle on this point, and which, it strikes us, would have been the reasonable thing for him to have done.

Mr. Woosley's testimony is not near as positive as that of Mr. Gayle. He is evasive in his answers on some of the salient facts, and he makes certain admissions which tend to weaken his testimony as a whole. As an illustration, we quote from parts of his cross-examination when he was called as a witness on rebuttal:

"Q. Mr. Woosley, the first check you got was September 20, wasn't it? A. Mr. Gayle, I don't know the date. I know I got three checks.

"Q. That might have been the 12th., so far as you know, might it not? A. I don't know.

"Q. You can't remember dates? A. Sure I can remember dates. I remember receiving one the 26th., of October, and the 24th.

"Q. Now, Mr. Woosley, you have handled a great many crop liens for fuel, have you not? A. Yes, sir.

"Q. Now, in the usual course, is it not a fact that the rice that you hold a lien on the mill makes a check payable to you and the other party and you both have to endorse the check? A. Yes.

"Q. Now, your first check was September 20th., and you knew when that check was handed you that the Louisiana Oil Refining Corporation was the payee, and you knew that De Witt Lewis and the Coastal Farms

were not on it—You knew it was for more rice sold than covered by that check, and you accepted that check, did you not, without protest? A. Mr. Gayle, last year was my first year to handle crop liens.

"Q. You heard Mr. Tyler testify that the usual thing was to place all the names of the people who owned an interest in rice on these rice checks, did you not? A. Yes.

"Q. You knew that this matter was handled differently from what you were handling eighteen or twenty other liens—Did you not? A. I don't know.

"Q. Just explain if you did not consent as testified to by myself and Mr. Gardner and Mr. Tyler, why you didn't protest on that first check? A. Because I didn't know then what I know now."

He then goes on to admit that at some time during the transaction the question of any one objecting to the method of distribution was brought up, and, when asked if he did not nevertheless accept the second check without protest, he answers:

"Mr. Gayle, I have a clerk there and sometimes I don't see the checks. They go through the office—Of course I get a report on my desk every morning as to what goes through.

"Q. And you now pretend to the Court that you never checked back on weights or a statement on the proceeds of sale in connection with this business? A. As a rule we get the check in full the first time. This case was very unusual.

"Q. Don't you know it wouldn't have been handled that way if you had raised one bit of objection to it? A. I wish I had.

"Q. But you didn't and you placed us all in this position that we are now in? [No answer.]"

This testimony is not of an impressive character and is certainly far from sufficient to rebut that of defendant's witnesses to the effect that Mr. Woosley had actual knowledge of the manner of distribution of the proceeds of sale of this rice, and that, if he did not expressly consent thereto, he by his conduct led defendant to believe that he had acquiesced therein.

We do not know of any rule of evidence which requires a stronger degree of proof than the usual preponderance, to rebut the presumption which the learned trial judge held existed in this case, with regard to the surrender or abandonment of a valuable right. Measured by the ordinary standard, we would say that the defendant has carried the burden by a fair preponderance at least.

A further circumstance which strengthens the defendant's side of the controversy on this issue, and which, in a way, tends to further offset the presumption that plaintiff would not lightly have surrendered a valuable right, lies in the fact, which we think the evidence fully discloses, that Mr. Woosley was bound to know that there would not be enough derived from the sale of the rice to take care of all harvesting expenses and that, if certain items, such as the sacks, the twine, the payment due on the separator, etc., were not taken care of, his company would have to take charge of harvesting the crop in order to get as much out of it as it could, on its advances. Rather than undertake such task, which would have involved the putting out of more money, it may well be that Mr. Woosley, who besides, had some twenty such liens to look after, would sooner have yielded some of his company's interest in the crop.

The conclusion which we have reached after a thorough examination of the record, a careful weighing of all the facts and circumstances in the case, forces us to reverse the judgment of the lower court and to render judgment in favor of the defendant.

For these reasons, it is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, reversed and set aside, and it is now ordered that there be judgment in favor of the defendant and against plaintiff, rejecting the latter's demand and dismissing its suit at its costs.